## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAWRENCE H. COHN         :       CIVIL ACTION
   Plaintiff               :
                        :
   v.                    :
                        :
UTICA FIRST INSURANCE COMPANY  :  NO.:  2:17-cv-5414
   Defendant            :

## PLAINTIFFS' AMENDED COMPLAINT

Plaintiff, through his attorney, Robert M. Firkser, Esquire, respectfully aver as follows:

1.     Plaintiff is an adult individual residing at Privada del Sol #15, San Miguel de Allende, Guanajuato, Mexico  37700.

2.     Defendant Utica First Insurance Co. (hereinafter, "Utica") is a corporation doing business as an insurance company in Pennsylvania with principal place of business at PO Box 851, Utica, NY  13503-0851.

3.     Utica is authorized by its charter to and does engage in the business of writing fire insurance policies within the Commonwealth of Pennsylvania.

4.     Plaintiff is the former owner of the real property and improvements situate at 10 E. 5th Street, Chester, Pennsylvania, 19013.

5.     Plaintiff purchased a hazard policy (hereinafter, "the Policy") from defendant to insure plaintiff's abovementioned property against accidental loss.  A copy of the applicable

insurance policy is attached hereto, marked Exhibit "A", and hereby incorporated herein by reference as though fully set forth herein.

6.      The full amount of insurance pursuant to the Policy applicable to the property for which plaintiff presented a claim is $978,632.00.

7.      Plaintiff paid all premium payments when due and has satisfied all conditions of the insurance policy.

8.      On or about June 23, 2015, the insured premises were severely damaged by wind and debris.

9.      The insured premises were totally destroyed by the incident of June 23, 2015.

10.     On the aforesaid date, the Policy was in full force and effect.

11.     Plaintiff timely advised defendant of the loss and delivered to defendant a particular account of the plaintiff's losses and damage and the value of the premises insured, and when and how the loss originated, and has duly performed all other conditions of the policy required of them.

12.     On June 13, 2016, Defendant advised Plaintiff that the applicable statute of limitations is two years.  A true and correct copy of Defendant's electronic mail to Plaintiff is attached hereto, marked Exhibit "B", and hereby incorporated herein by reference as though fully set forth herein.


## COUNT I
## BREACH OF CONTRACT
## REPLACEMENT PROPERTY

13.     Paragraphs 1 through 12 above are hereby incorporated herein by reference as though fully set forth herein.

14.     The Policy provides that in the event that Plaintiff should rebuild, repair or replace the damaged property with property of "equivalent kind and quality to the extent practicable", there would be no deduction for depreciation.

15.     Plaintiff was aware of the Policy provisions that, should he rebuild, repair or replace the damaged property with property of "equivalent kind and quality to the extent practicable", there would be no deduction for depreciation.

16.     In reliance on the abovementioned Policy provisions, Plaintiff expended the monies necessary to purchase a replacement property.

17.     Based on the Policy provisions, Plaintiff anticipated that Defendant would not make any deductions for depreciation when making payment pursuant to the Policy and would make payment to Plaintiff in the amount of any depreciation deduction.

18.     On May 22, 2016, by electronic mail to the Defendant, Plaintiff, in compliance with the requirements of said contract of insurance, notified Defendant that Plaintiff had purchased a property of equivalent kind and quality.  A true and correct copy of Plaintiff's electronic mail dated May 22, 2016, is attached hereto, marked Exhibit "C", and hereby incorporated herein by reference as though fully set forth herein.

19.     The replacement property that plaintiff procured is situate in San Miguel de Allende, GTO, Mexico, for a purchase price of $520,000.00.

20.     The said property is a "replacement property" under the Policy.

21.     Plaintiff made a timely demand on Defendant for payment in the amount of $111,302.00, being the amount Defendant deducted for depreciation.

22.     Defendant has failed and refused to pay the abovementioned amount.

WHEREFORE, plaintiff requests judgment in his favor against defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest and costs.

## COUNT II
## BREACH OF CONTRACT
## DEDUCTION FOR DEPRECIATION FOR COST OF LABOR,
## NON MATERIAL COSTS, PROFIT AND OVERHEAD

23.     Paragraphs 1 through 22 above are hereby incorporated herein by reference as though fully set forth herein.

24.     There policy provides for replacement cost coverage less depreciation for certain applicable item in the event that the property was not repaired or replaced.

25.     Plaintiff submitted documents showing that the full cost of repair or replacement was $562,059.10.

26.     Defendant did not dispute Plaintiff's claim that the full cost of repair or replacement was $562,059.10.

27.     From the aforementioned full cost of repair Defendant deducted the sum of $110,302.11 for depreciation of certain items.

28.     In calculating the items to be depreciated, Defendant did include depreciation in the amount of 25% for the "cost of labor, non material costs, profit and overhead".

29.     Plaintiff believes and therefore avers that the aforesaid items are not depreciable

30.     The total estimated cost as determined by Defendant of labor, non material costs, profit and overhead was approximately $205,138.00.

31.     The amount that was deducted by Defendant for the depreciation of the aforementioned items was approximately $51,284.50.

32.     Defendant willfully failed to pay for these non depreciable items despite repeated requests.

Wherefore, the Plaintiff requests judgement in his favor against the Defendant in excess of Fifty Thousand Dollars ($50,000.00), plus interest and costs.

## COUNT III
## BAD FAITH

33.     Paragraphs 1 through 32 above are hereby incorporated herein by reference as though fully set forth herein.

34.     Plaintiff has permitted defendant an extraordinary amount of time to evaluate this loss.  Plaintiffs have provided information and documentary evidence in support of his claim. Plaintiff has permitted inspections of their property by consultants and contractors retained by defendant.

35.     Defendant prepared the Policy in issue and presented it to Plaintiff in return for Plaintiff's payment of premiums.

36.     Defendant represented to Plaintiff, in the language of the Policy, that it would provide coverage for losses without deduction of depreciation in certain circumstances, including the purchase of a replacement property, and that it would provide coverage for losses without deduction of depreciation on labor, non material costs, profit and overhead.

37.     Defendant's actions were deceptive in that Defendant induced Plaintiff to make payment of premiums for coverage that Defendant thereafter refused to provide.

38.     Plaintiff relied on Defendant's representations, as set forth in the Policy, when purchasing the Policy and in making payment of premiums.

39.     Plaintiff's reliance was justifiable in that Plaintiff reasonably expected Defendant to provide the coverage represented in the Policy.

40.     Despite the above, Defendant deducted depreciation of $113,302.00, ignoring the fact that Plaintiff purchased a replacement property.

41.     Despite the above, Defendant deducted depreciation of $51,284.50 on labor, non material costs, profit and overhead costs.

42.     Defendant is aware of its obligation to make payment to Plaintiff for the full amount of Plaintiff's losses, without deductions for depreciation or other charges.

43.     With knowledge of its obligations under the Policy, and without reasonable basis, Defendant refused to make full payment to Plaintiff.

44.     Defendant's refusal to pay the full amount of plaintiff's loss is unfounded and frivolous, evidencing a reckless disregard for their rights under the policy.

45.     Defendant has violated the Pennsylvania Unfair Insurance Practices Act (40 P.S. 1171.2, et seq) and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. §201, et seq).

46.     Defendant, through its actions and failure to act, as stated above, has acted in bad faith towards the plaintiff and has violated 42 Pa. C.S.A. §8371.

47.     Defendant lacks a reasonable basis for its failure to accept liability of plaintiff's claims.

48.     Defendant lacks a reasonable basis for its delay in evaluating and paying plaintiff's claims.

49.     Defendant knew of or recklessly disregarded its lack of a reasonable basis to deny the plaintiff's claims.

50.     As a direct result of defendant's bad faith, plaintiff has been deprived to his detriment of the benefits to which they are entitled.

51.     By reason of the aforesaid, defendant is liable to plaintiff in the amount of $111,302.11.

52.     Alternatively, by reason of the aforesaid, defendant is liable to plaintiff in the amount of $70,243.01.

53.     Also by reason of the aforesaid, defendant is liable to plaintiffs for punitive damages.

54.     Also by reason of the aforesaid, defendant is liable to plaintiffs for reasonable attorney's fees.

55.     Also by reason of the aforesaid, defendant is liable to plaintiffs for costs and interest.

WHEREFORE, plaintiff requests judgment in his favor against defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest and costs.

## COUNT IV
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

56.     Paragraphs 1 through 55 above are hereby incorporated herein by reference as though fully set forth herein.

57.     Defendant's actions as aforesaid were knowing and intentional, with the intent to avoid paying Plaintiff the amounts to which plaintiff is entitled under the Policy

58.     Defendant prepared the Policy in issue and presented it to Plaintiff in return for Plaintiff's payment of premiums.

59.     Defendant represented to Plaintiff, in the language of the Policy, that it would provide coverage for losses without deduction of depreciation in certain circumstances, including the purchase of a replacement property, and that it would provide coverage for losses without deduction of depreciation on labor, non material costs, profit and overhead.

60.     Defendant's actions were deceptive in that Defendant induced Plaintiff to make payment of premiums for coverage that Defendant thereafter refused to provide.

61.     Plaintiff relied on Defendant's representations, as set forth in the Policy, when purchasing the Policy and in making payment of premiums.

62.     Plaintiff's reliance was justifiable in that Plaintiff reasonably expected Defendant to provide the coverage represented in the Policy.

63.     Despite the above, Defendant deducted depreciation of $113,302.00, ignoring the fact that Plaintiff purchased a replacement property.

64.     Despite the above, Defendant deducted depreciation of $51,284.50 on labor, non material costs, profit and overhead costs.

65.     Defendant's actions as described above constitute unfair or deceptive acts or practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq.

66.     The said unfair or deceptive acts or practices constitute fraudulent conduct which created a likelihood of confusion or misunderstanding.

67.     By reason of the aforesaid, defendant is liable to plaintiff in the amount of $111,302.11.

68.     Alternatively, by reason of the aforesaid, defendant is liable to plaintiff in the amount of $70,243.01.

69.     Also by reason of the aforesaid, defendant is liable to plaintiff for treble damages pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

70.     Also by reason of the aforesaid, defendant is liable to plaintiff for costs and reasonable attorney's fees pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

WHEREFORE, plaintiff requests judgment in his favor against defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus interest and costs.


ROBERT M. FIRKSER, ESQUIRE
333 W. Baltimore Ave.
Media, Pennsylvania   19063
610-565-6010
I.D. No. 28232
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAWRENCE H. COHN | : | CIVIL ACTION |
|   Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| UTICA FIRST INSURANCE COMPANY | : | NO.:  2:17-cv-5414 |
|   Defendant | : | |

## <u>CERTIFICATE OF SERVICE</u>

Robert M. Firkser, Esquire, hereby certifies that a copy of plaintiff's Amended Complaint was served via the electronic filing system of the United States District Court for the Eastern District of Pennsylvania, and by Unites States Mail, postage pre-paid, on the date listed below on:

> Stephen J. Schildt, Esquire
> Post & Schell, P.C.
> Four Penn Center, 13th Floor
> 1600 John F. Kennedy Blvd.
> Philadelphia, PA   19103-2808

Date:  January 4, 2018

ROBERT M. FIRKSER, ESQUIRE
333 W. Baltimore Ave.
Media, Pennsylvania   19063
610-565-6010
I.D. No. 28232
Attorney for Plaintiff

EXHIBIT "A"

AAIS

PLEASE READ THIS ENTIRE POLICY CAREFULLY
— THIS IS A LEGAL CONTRACT —

BP-200
(Ed. 1-87)

# BUSINESSOWNERS SPECIAL POLICY

## TABLE OF CONTENTS

| | Page |
|---|---|
| **Agreement** | 1 |
| **Common Policy Conditions** | 2 |
| **Property Coverage Section** | |
| Definitions | |
| Coverage A — Buildings and Coverage B — Business Personal Property | 3 |
| Coverage A — Buildings | 3 |
| Coverage B — Business Personal Property | 3 |
| Property Not Covered And Exclusions | 3 |
| Supplemental Property Coverages | 4 |
| Coverage C — Loss Of Income | 5 |
| Earnings | 6 |
| Extra Expenses | 6 |
| Exclusions And Limitations | 6 |
| Supplemental Loss Of Income Coverages | 7 |
| Perils Covered | 7 |
| Perils Not Covered, Exclusions and Limitations | 7 |
| What Must Be Done In Case Of Loss | 11 |
| Valuation Of Property Losses | 12 |
| Loss Payment | 13 |
| Other Property Coverage Conditions | 13 |
| **Commercial Liability Coverage Section** | |
| Definitions | 15 |
| Principal Coverages | 17 |
| Coverage L — Bodily Injury/Property Damage | 17 |
| Coverage M — Medical Payments | 17 |
| Coverage N — Products/Completed Work | 17 |
| Coverage O — Fire Legal Liability | 17 |
| Incidental Liability Coverages | 18 |
| Defense Coverage | 19 |
| Exclusions That Apply To All Coverages | 19 |
| Additional Exclusions That Apply To Property Damage Liability | 21 |
| Additional Exclusions That Apply To Medical Payments | 21 |
| What Must Be Done In Case Of Loss | 22 |
| How Much We Pay | 22 |
| Conditions | 23 |
| Nuclear Energy Liability Exclusion | 24 |
| Nuclear Energy Liability Exclusion Definitions | 25 |

Endorsements may also apply. They are identified on the Declarations page.

Refer to the Definitions for words that have special meanings. These words are shown in **'bold type.'**

## AGREEMENT

Subject to all the **terms** that apply, and in return for **your** payment of the required premium, **we** provide the coverages described in this policy during the policy period.

# COMMON POLICY CONDITIONS

This Common Policy Conditions Section contains additional terms that apply to all coverages provided by this policy.

1. **Assignment** — This policy is void if it is assigned without our written consent.

2. **Cancellation** — **You** may cancel this policy by returning it to **us** or by giving **us** a written notice and stating at what future time coverage is to cease.

   **We** may cancel this policy, or one or more of its parts, by giving **you** a written notice at least 10 days before the cancellation is to take effect. The notice will state the time that the cancellation is to take effect. The notice will be sent to **your** mailing address last known to **us**.

   **Your** return premium, if any, will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification or Waiver of Policy Terms**— A change or waiver of terms of this policy must be issued by **us** in writing to be valid.

4. **Conformity With Statute** — Terms of this policy, in conflict with the statutes of the state where the premises described are located, are amended to conform to such statutes.

5. **Cooperation** — In case of loss, **you** must cooperate in performing all acts required by this policy.

6. **Examination of Books and Records** — **We** may examine and audit **your** books and records that

relate to this policy during the policy period and within three years after the policy has expired.

7. **Inspections** — **We** have the right, but are not obligated, to inspect **your** property and operations. This inspection may be made by **us** or may be made on **our** behalf. An inspection or its resulting advice or report does not warrant that **your** property or operations are safe, healthful or in compliance with laws, rules or regulations. Inspections or reports are for **our** benefit only.

8. **Liberalization** — If **we** adopt a revision of forms during a policy period which broadens this policy without additional premium, the broadened coverage will automatically apply to this policy. This also applies if **we** adopt the revision within 60 days before this policy is effective.

9. **Misrepresentation, Concealment or Fraud** — This coverage is void if before or after a loss:

   a. any **insured** has concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) the **insured's** interest herein;

   b. there has been fraud or false swearing by any **insured** with regard to a matter that relates to this insurance or the subject thereof.

© Copyright 1987 AAIS

# PROPERTY COVERAGES

This Property Coverage Section contains the definitions, coverage descriptions, perils, exclusions, limitations and conditions that apply to Businessowners Property Coverages.

## DEFINITIONS

1. **Basic Territory** — This means the United States of America, its territories and possessions, Canada and Puerto Rico.

2. **Terms** — This means all provisions, limitations, exclusions, conditions and definitions that apply.

3. **We, Us, Our** — These words mean the company providing this coverage.

4. **You, Your** — These words mean the persons or organizations named on the Declarations.

## COVERAGE A - BUILDINGS and COVERAGE B - BUSINESS PERSONAL PROPERTY

We provide insurance for the following coverages indicated by a specific limit or premium charge on the Declarations. We insure against loss caused by the Perils Covered.

### COVERAGE A — BUILDINGS

We cover the buildings and structures described on the Declarations. This includes the following property located on the described premise:

1. additions;

2. fixtures, machinery and equipment which are a permanent part of the buildings and are used to provide building services;

3. outdoor fixtures;

4. personal property used for maintenance or service of the described premises, including air-conditioning equipment; fire extinguishing apparatus; floor coverings; and appliances for refrigerating, cooking, dishwashing and laundering;

5. material, equipment and supplies intended for use in construction, alteration or repair of the buildings; and

6. buildings that are auxiliary to the described buildings.

## COVERAGE B — BUSINESS PERSONAL PROPERTY

We cover your business personal property in the described buildings or in the open (or in vehicles) on or within 100 feet of the described premises. This includes:

1. your interest in personal property of others to the extent of your labor, material and service; and

2. your use interest in improvements to the described buildings. Improvements means fixtures, alterations, installations or additions to a building you do not own. These improvements must have been made or acquired at your expense, other than rent, and not be legally subject to removal by you.

## PROPERTY NOT COVERED AND EXCLUSIONS

The following exclusions and limitations are applicable to Coverage A — Buildings and Coverage B — Business Personal Property. Limited coverage of some of these types of property is included in the Supplemental Property Coverages.

1. Animals and Pets — We do not cover animals and pets, except those held for sale.

2. Antennas, Awnings, Canopies, Fences and Signs — We do not cover outdoor:

   a. radio, television, satellite, dish-type or other antennas and their masts, towers and lead-in wiring;

   b. awnings, or canopies of fabric or slat construction or their supports;

   c. fences; or

   d. signs.

3. Contraband — We do not cover contraband or property in the course of illegal transportation or trade.

4. Foundations, Retaining Walls, Pilings, Piers, Wharfs or Docks — We do not cover:

   a. foundations which are below the lowest basement floor or below ground level if there is no basement;

   b. retaining walls that are not part of buildings; or

© Copyright 1987 AAIS

c. pilings, piers, wharves or docks.

5. Land, Cost of Excavation, Grading or Filling, Paved Surfaces or Underground Pipes, Flues or Drains — We do not cover:

   a. land, including land on which the property is located;
   b. cost of excavations, grading or filling;
   c. paved outdoor surfaces, including driveways, parking lots, roads and walks; or
   d. underground pipes, flues and drains.

6. Money, Securities or Lottery Tickets — We do not cover money, securities or lottery tickets.

7. Personal Property of Landlord — We do not cover under Building Coverage, property in apartments or rooms you furnish as a landlord, other than personal property used for maintenance or service of the building.

8. Personal Property of Others — We do not cover personal property owned by others.

9. Property More Specifically Insured — We do not cover property which is more specifically insured in whole or in part by any other insurance. We do cover the amount in excess of the amount due from the more specific insurance.

10. Trees, Shrubs and Plants — We do not cover trees, shrubs and plants, including lawns and growing crops.

11. Vehicles, Aircraft and Watercraft — We do not cover:

    a. vehicles designed for use on public roads;
    b. aircraft; or
    c. watercraft, including motors, equipment and accessories, while afloat.

12. Water — We do not cover underground or surface water.

## SUPPLEMENTAL PROPERTY COVERAGES

We provide the following extensions of your Property Coverages.

Unless otherwise stated, each supplemental coverage:

   a. applies for loss caused by a Peril Covered;
   b. applies only at the described premises; and
   c. is an additional amount of insurance.

1. We provide the following extensions of either Coverage A — Buildings or Coverage B — Business Personal Property:

   a. Antennas — You may apply an amount up to $500 to cover your outdoor radio, television, satellite, dish-type or other antennas, including their masts, towers or lead-in wiring.
   b. Awnings, Canopies — You may apply an amount up to $1,000 to cover your outdoor awnings and canopies of fabric or slat construction or their supports.
   c. Fences — You may apply an amount up to $1,000 to cover fences. We only cover loss caused by aircraft, civil commotion, explosion, fire, lightning or riot.
   d. Fire Department Service Charges — You may apply an amount up to $1,000 to cover your liability, assumed by contract or agreement prior to the loss, for fire department service charges.

      This coverage is limited to the charges incurred when the fire department is called to save or protect covered property from a peril covered.

   e. Signs — You may apply an amount up to $1,000 to cover outdoor signs.

2. We provide the following extensions of Coverage A — Buildings and Coverage B — Business Personal Property:

   a. Debris Removal — We cover the cost of removing debris of the covered property caused by a peril covered. This coverage does not include costs to:

      1) extract pollutants from land or water; or
      2) remove, restore or replace polluted land or water.

      Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor or waste. Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.

      We will not pay any more under this debris removal coverage than 25 percent of the amount we pay for the direct loss or damage. We will not pay more for loss to property and debris removal combined than the limit of insurance for the property.

      However, we will pay an additional amount of debris removal expense up to $5,000 when the

debris removal expenses exceeds 25 percent of the amount we pay for direct loss or damage or when the loss to property and debris removal combined exceeds the limit of insurance for the property.

We will not pay any expenses unless they are reported to **us** within 180 days of the direct physical loss or damage to covered property.

b. Removal — **We** cover loss to covered property while removed from the insured location for preservation from damage caused by a peril covered. This coverage applies for up to 10 days, but does not extend past the expiration of the policy.

c. Repairs — **We** cover the cost of repairs that are reasonable and necessary to protect covered property from further damage after damage resulting from a peril covered. **We** will not pay more for loss to property and repairs combined than the limit of insurance for the property.

3. **We** provide the following extensions of Coverage A — Buildings:

a. Building Coverage — Off Premises — **You** may apply an amount up to $5,000 to property covered while temporarily at locations that **you** do not own, control, rent or lease. **We** only cover loss at such locations within the **basic territory**. This coverage does not include property while in transit.

b. Buildings — Newly Acquired — **You** may apply an amount up to 25 percent of the limit of insurance, but not exceeding $250,000, to cover **your** buildings or structures being built or that **you** acquire. This coverage is for up to 30 days after construction is started or **you** acquire the building, but not beyond the expiration of the policy. **We** only cover loss at such locations within the **basic territory**. Additional premium will be charged from the date construction is started or the date **you** acquire the building.

c. Trees, Shrubs and Plants — **You** may apply an amount up to $1,000 to cover outdoor trees, shrubs and plants. **We** only cover loss caused by aircraft, civil commotion, explosion, fire, lightning or riot. This coverage is limited to $250 on any one tree, shrub or plant, including debris removal expense.

4. **We** provide the following extensions of Coverage B

— Business Personal Property:

a. Personal Effects — **You** may apply an amount up to $500 to cover household and personal effects owned by **you** or **your** employees, officers or partners. This coverage is limited to $100 for property owned by any one person.

b. Personal Property — Acquired Locations — **You** may apply an amount up to 10 percent of the limit of insurance, but not exceeding $20,000, to property covered at locations that **you** acquire, other than at fairs or exhibitions. This coverage applies for up to 30 days after **you** acquire this location, but not beyond the expiration of the policy.

We only cover loss at such locations within the **basic territory**. Additional premium will be charged from the date **you** acquire the locations.

c. Personal Property — Off Premises — **You** may apply an amount up to $5,000 to property covered while temporarily at locations that **you** do not own, control, rent or lease. **We** only cover loss at such locations within the **basic territory**. This coverage includes property while in transit. **We** do not cover theft loss from unattended vehicles unless the loss results from forced entry of a securely locked compartment. There must be visible evidence that the entry was forced.

d. Personal Property of Others — **You** may apply an amount up to $2,500 to cover personal property of others in **your** care. This coverage is only for the benefit of the owners of the personal property.

e. Valuable Papers and Records — **You** may apply an amount up to $1,000 to cover the cost of research or other expenses necessary to reproduce, replace or restore **your** valuable papers and records.

## COVERAGE C — LOSS OF INCOME

We provide the Earnings and Extra Expense Coverage shown below when **your** business is necessarily interrupted by loss or damage to real or personal property caused by a peril covered during the policy period. This coverage applies only when the loss or damage to real or personal property is at the described premises or in the open within 100 feet thereof.

© Copyright 1987 AAIS

We will pay only the loss of earnings and extra expenses incurred within 12 consecutive months after the loss or damage to property. When a limit of insurance is shown on the Declarations, we will not pay more for earnings and extra expenses combined than the limit.

## EARNINGS

We cover your actual loss of net income normally earned by your business and payroll expense, taxes, interest, rents and other operating expenses normally incurred by your business. Net income means profit or loss before income tax.

We cover only such expenses as are necessary during this interruption of business. Consideration will be given to continuation of payroll and other expenses to the extent necessary to resume your business with the same quality of service that existed before the loss.

We cover your loss for the time it should reasonably take to resume your business, but no longer than the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage. This loss is not limited by the expiration date of the policy.

You must do all you can to reduce the loss. We do not cover any increase in loss due to your failure to use reasonable efforts to resume complete or partial business. This includes making use of other locations and property to reduce the loss.

In determining a loss, we will consider the experience of your business before the loss and the probable experience had no loss occurred.

## EXTRA EXPENSES

We cover the necessary extra expenses that you incur in order to continue as nearly as practical your normal business following damage by a peril covered.

We cover your extra expenses for the time it should reasonably take to resume your normal business, but no longer than the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage. The loss is not limited by the expiration date of the policy.

You must do all you can to resume your business and to reduce the loss. We do not cover any increase in loss due to your failure to use reasonable efforts to resume complete or partial business. This includes making use of other locations and property to reduce the loss.

The salvage value of any property bought for temporary use shall be deducted from the extra expenses.

## EXCLUSIONS AND LIMITATIONS

The following additional exclusions and limitations are applicable to Coverage C — Loss of Income.

1. Delayed Rebuilding, Repairing or Replacement — We do not cover any loss beyond the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage.

2. Electronic Equipment — We do not cover earnings loss caused by loss or damage to media, programs or records for electronic data processing or electronically controlled equipment beyond 60 consecutive days, or the time necessary to rebuild, repair or replace other damaged property, whichever is greater.

3. Environmental Damage — We do not cover any increase in loss caused by any law, regulation, or decree that regulates the prevention, control, repair, decontamination, clean-up or restoration of environmental damage.

4. Fire Extinguishment — We do not cover expenses to put out a fire.

5. Leases, Licenses, Contracts or Orders — We do not cover any increase in loss due to the suspension, lapse or cancellation of leases, licenses, contracts or orders.

   We do cover such loss resulting directly from the interruption of your business, but not beyond the time the business could have been resumed.

6. Property Damage — We do not cover the normal cost of repair, replacement or restoration of property.

   We will cover expenses in excess of normal that you necessarily incur to reduce the loss, but only to the extent that they reduce the loss under this coverage.

7. Records — We do not cover the cost of research or other extra expense necessary to replace records, including electronic data processing or electronically controlled equipment programs, data or media.

   We will cover expenses in excess of normal that

**you** necessarily incur to reduce loss, but only to the extent that they reduce the loss under this coverage.

8. Strikes, Protests and Other Interference — We do not cover any increase in loss due to interference by strikers or other persons at the described premises. This applies to interference with rebuilding, repairing or replacing property or with the resumption of **your** business.

## SUPPLEMENTAL LOSS OF INCOME COVERAGES

**We** provide the following extensions of Coverage C — Loss of Income:

1. Alterations and New Buildings — **We** extend **your** coverage to include loss caused by damage to additions, alterations and new buildings under construction at the described premises by a peril covered. **We** cover **your** loss for the delay in using such additions, alterations and new buildings starting from the time business would have begun had no damage occurred. This does not increase the limit of insurance.

2. Interruption by Civil Authority — **We** extend **your** coverage to include loss while access to **your** premises is specifically denied by an order of a civil authority. This order must be a result of damage to property in the immediate vicinity and caused by a peril covered. This extension is limited to two consecutive weeks. This does not increase the limit of insurance.

3. Newly Acquired Locations — **We** extend **your** coverage for an amount up to $100,000, to include loss caused by damage to locations that **you** acquire, other than at fairs or exhibitions. This coverage applies for up to 30 days after **you** acquire this location, but not beyond the expiration of the policy.

   **We** only cover loss at such locations within the **basic territory** and caused by a peril covered. Additional premium will be charged from the date **you** acquire the locations.

   This is an additional amount of insurance.

4. Period of Loss Extension — **We** extend **your** coverage to cover loss for the time from the date the property that incurred the loss or damage is rebuilt, repaired or replaced, until the date **you** could reasonably resume **your** normal business, or

the end of 30 consecutive days, whichever is earlier. This does not increase the limit of insurance.

## PERILS COVERED

The Perils Covered apply to Coverage A — Buildings, Coverage B — Business Personal Property and Coverage C — Loss of Income.

**We** insure against risks of direct physical loss, except as excluded or limited.

Specified Perils — When reference is made to "specified perils," **we** mean aircraft; breakage of building glass; civil commotion; collapse of buildings; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; sinkhole collapse; smoke; sonic boom; vandalism; vehicles; volcanic action; water damage; weight of ice, snow or sleet; and windstorm, all except as excluded or limited.

## PERILS NOT COVERED EXCLUSIONS AND LIMITATIONS

A. **We** do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

1. Civil Authority — **We** do not cover loss caused by order of any civil authority, including seizure, confiscation or destruction of property.

   **We** will cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this policy.

2. Earth Movement or Volcanic Eruption — **We** do not cover loss caused by any earth movement (other than sinkhole collapse) or caused by eruption, explosion or effusion of a volcano.

   Earth movement includes, but is not limited to, earthquake; landslide; mudflow; mudslide; or sinking, rising or shifting of earth.

   Sinkhole collapse means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

We will cover direct loss by fire, explosion or volcanic action resulting from either earth movement or eruption, explosion or effusion of a volcano.

Volcanic action means:

a. airborne volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow

All volcanic eruptions that occur within a 72-hour period shall be considered a single loss.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss to the covered property.

3. Nuclear Hazard — We do not cover loss caused by nuclear hazard. This means nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled. Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. This exclusion does not apply to direct loss by fire resulting from nuclear hazards.

4. Ordinance or Law — We do not cover loss or increased cost caused by enforcement of any code, ordinance or law regulating the use, construction, repair or demolition of any building or structure.

5. Utility Failure — We do not cover loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the described location. Interruption includes reduced voltage, low pressure or other interruptions of normal services.

We will cover the direct loss by a peril insured against which occurs on the described premises as a result of any power interruption.

6. War — We do not cover loss caused by war, including undeclared war; civil war; insurrection; rebellion; revolution; warlike act by a military force or military personnel; or destruction, seizure or use of property for a military purpose. We do not cover loss due the consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

7. Water Damage — We do not cover loss caused by:

a. flood, surface water, waves, tidal water, overflow of a body of water or spray from any of these whether wind driven or not;

b. water which backs up through sewers or drains; or

c. water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through or into a building, sidewalk, driveway, foundation, swimming pool or other structure.

We will cover the direct loss by fire, explosion or sprinkler leakage which may result.

B. We do not pay for loss or damage if one or more of the following exclusions apply to the loss:

1. Animals — We do not cover loss caused by or resulting from animals, including birds and insects. We will cover any resulting loss caused by "specified perils."

We do not cover loss to animals, including birds and insects, except death or destruction of animals held for sale caused by "specified perils."

2. Boilers - Steam — We do not cover loss to steam boilers, steam pipes, steam turbines or steam engines caused by any condition or occurrence within such equipment, including bursting, cracking, exploding or rupturing. This exclusion does not apply to loss or damage caused by explosion of gas or fuel in the firebox, combustion chamber or flues.

3. Building Materials — We do not cover under the Buildings Coverage loss by theft of building materials and supplies that are not attached to buildings.

We will cover loss caused by looting and pillaging at the time and place of a riot or civil commotion.

4. Collapse — We do not cover loss by collapse that results from an excluded cause or event.

5. Contamination — See Pollutants.

6. Criminal, Fraudulent or Dishonest Act — We do not cover loss caused by or resulting from fraudulent, dishonest or criminal acts committed

by **you**, any employees while working or otherwise, any associates or agents. This includes loss caused by **your** partners, officers, directors, trustees, joint adventurers or any persons to whom property may be entrusted, whether working alone or with others.

7. Defects, Errors and Omissions — We do not cover loss which results from one or more of the following:

    a. an act, error or omission (negligent or not) relating to:

        1) land use;
        2) the design, specification, construction workmanship, installation or maintenance of property;
        3) planning, zoning, development, siting, surveying, grading or compaction; or
        4) maintenance of property (including land, structures or improvements);

    whether on or off the premises;

    b. a defect, a weakness, the inadequacy, a fault or unsoundness in materials used in construction or repair, whether on or off the premises.

In addition, we do not cover loss to Business Personal Property caused by deficiency or defects in design, specifications, materials or workmanship, or caused by or resulting from latent or inherent defects.

We will cover any resulting loss caused by an insured peril unless the resulting loss itself is excluded.

8. Deterioration — We do not cover loss caused by or resulting from deterioration including corrosion, decay, fungus, mildew, mold, rot or rust.

We will cover any resulting loss caused by "specified perils."

9. Disappearance — We do not cover unexplained or mysterious disappearance, or shortage discovered on taking inventory.

10. Electrical Currents — We do not cover loss caused by or resulting from arcing or by electrical currents other than lightning. If a fire results, we will cover only the damage caused by fire.

11. Explosion — We do not cover loss caused by or resulting from explosion of steam boilers, pipes, turbines or engines that **you** own or lease or that are operated under **your** control. This exclusion does **not** apply to loss or damage caused by explosion of gas or fuel in the firebox, combustion chamber or flues.

If a fire results, we will cover only the damage caused by the fire.

12. Falling Objects — We do not cover, under "specified perils," loss caused by or resulting from falling objects to personal property in the open or to the interior of buildings or personal property inside buildings unless the exterior of the roof or walls are first damage by the falling objects.

13. Freezing — We do not cover water damage caused by or resulting from freezing of plumbing, heating, air-conditioned systems or appliances during vacancy or unoccupancy. This exclusion does not apply during permitted vacancy or unoccupancy if **you** used reasonable care to maintain heat in the building or to turn off water and drain the equipment, if heat is not maintained.

We do not cover water damage caused by or resulting from freezing of fire protection systems or appliances during vacancy or unoccupancy. This exclusion does not apply during permitted vacancy or unoccupancy if **you** used reasonable care to maintain conditions necessary for the proper operation of the fire protection equipment.

14. Furs — We do not cover furs or fur garments for loss or damage by theft for more than $2,500 total in any one occurrence.

15. Glass Breakage — We do not cover building glass breakage loss for more than $100 for any plate, pane, multiple plate insulating unit, heating pane, jalousie, louver or shutter, or more than $500 in any one occurrence. These limits do not apply to loss by "specified perils" other than breakage of building glass or vandalism.

16. Glassware — Fragile Articles — We do not cover breakage of fragile articles, except as a result of "specified perils." This exclusion applies to articles such as glassware, statuary, porcelains and bric-a-brac. We will cover the breakage of bottles or other containers held for sale, and

— 9 —

© Copyright 1987 AAIS

lenses of photographic and scientific instruments.

17. Hot Water Boilers or Heaters — **We** do not cover loss to hot water boilers or heaters caused by any condition or occurrence within such equipment other than an explosion. This exclusion includes bursting, cracking or rupturing.

18. Increased Hazard — **We** do not cover loss occurring while the hazard has been materially increased by any means within **your** knowledge or control.

19. Jewelry, Watches, Jewels, Pearls and Precious Stones and Metals — **We** do not cover more than $2,500 total in any one occurrence for loss or damage by theft of jewelry; watches; watch movements; jewels; pearls; precious or semiprecious stones; gold, silver or other precious metals; or items consisting primarily of precious metals. This limitation does not apply to items of jewelry or watches worth $50 or less.

20. Neglect — **We** do not cover loss caused by or resulting from **your** neglect to use all reasonable means to save covered property at and after the time of loss.

    **We** do not cover loss or damage caused by or resulting from **your** neglect to use all reasonable means to save and preserve covered property when endangered by a peril covered.

21. Patterns, Dies, Molds, Models and Forms — **We** do not cover more than $2,500 total in one occurrence for loss or damage by theft to patterns, dies, molds, models or forms.

22. Pollutants — **We** do not cover loss caused by or resulting from release, discharge or dispersal of pollutants unless the release, discharge or dispersal is caused by "specified perils."

    Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor or waste. Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.

    **We** will cover any resulting loss caused by "specified perils."

23. Protective Safeguards — **We** do not cover losses occurring while protective safeguards that **you**

control are not in working condition. This exclusion applies only to protective safeguards shown on the Declarations and to the property, premises and perils affected. This lasts until the safeguards are back in order.

24. Seepage — **We** do not cover loss caused by, or resulting from, continuous or repeated seepage or leakage from within a plumbing, heating or air-conditioning system or domestic appliance.

25. Settling, Cracking, Shrinking, Bulging or Expanding — **We** do not cover loss caused by or resulting from settling, cracking, shrinking, bulging or expanding of pavements, footings, foundations, walls, ceilings or roofs. **We** will cover any resulting loss by "specified perils."

26. Smog, Smoke, Vapor or Gas — **We** do not cover loss caused by or resulting from smog, smoke, vapor or gas from agricultural or industrial operations.

27. Stamps, Tickets, Letters of Credit — **We** do not cover more than $250 total in any one occurrence for loss to stamps, tickets or letters of credit. This limitation does not apply to "specified perils."

28. Temperature — Humidity — **We** do not cover loss to personal property caused by or resulting from dampness, or changes in or extremes of temperature. **We** will cover any resulting loss caused by "specified perils."

29. Vacancy — Unoccupancy — **We** do not cover loss occurring while the building has been vacant beyond 60 consecutive days.

    **We** do not cover loss occurring while the building has been unoccupied for more than 60 consecutive days or for more than the usual or incidental unoccupancy period for the described premise, whichever is longer.

    Unoccupancy means that the customary activities or operations of the described occupancy are suspended, but personal property has not been removed. The building shall be considered vacant and not unoccupied when the occupants have moved, leaving the building empty except for limited personal property.

30. Valuable Papers and Records — **We** do not cover loss to valuable papers or records except by "specified perils." This limitation applies to

account books, bills, card index systems, data processing media, deeds, drawings, evidences of debt, manuscripts and other records.

31. **Voluntary Parting** — We do not cover loss caused by or resulting from voluntary parting with title or possession of any property because of any fraudulent scheme, trick or false pretense.

32. **Wear — Breakdown** — We do not cover loss caused by or resulting from wear and tear, mechanical breakdown, centrifugal force, marring or scratching.

We will cover any resulting loss caused by "specified perils."

33. **Weather** — We do not cover loss to personal property in the open caused by rain, snow, ice or sleet.

We do not cover loss to the interior of buildings caused by rain, snow, sand or dust unless entering through openings made by "specified perils."

We do not cover, when outdoors: radio, television, satellite, dish-type or other antennas or their masts, towers or lead-in wiring; awnings or canopies of fabric or slat construction or their supports; gutters and downspouts; outdoor fixtures; or personal property for loss caused by the weight of ice, snow or sleet, except as a result of collapse of the building.

We do not cover loss resulting from weather conditions if the weather conditions contribute in any way with exclusions A. 1. through A. 7. We do pay any ensuing loss not excluded in this policy.

34. **Work or Operations** — We do not cover loss to property caused by or resulting from actual work or operations. This includes altering, constructing, installing, manufacturing, processing, servicing or testing. We will cover any resulting loss caused by "specified perils."

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** — You must promptly notify us or our agent (in writing, if requested). You must notify the police if the loss is a result of a violation of a law.

2. **Protect Property** — You must take all reasonable

steps to protect the covered property from further damage.

3. **Right of Recovery** — We are not liable for a loss if you do anything after the loss occurs to impair our right to recover, except for waivers permitted in the Other Property Coverage Conditions.

If we make a payment under this coverage, we may require that you assign to us your right of recovery against any person for the loss to the extent of the payment for the loss. You must do everything necessary to make this assignment and secure our rights.

4. **Proof of Loss** — You must send us a statement of loss (under oath, if requested) within 60 days after the loss. This must include the following information:

   a. the time, place and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. your interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title or occupancy of the property covered during the policy period;

   e. detailed estimates for repair or replacement of covered property;

   f. available plans and specifications of buildings or structures;

   g. detailed estimates of any covered loss of income and expenses; and

   h. if requested, an inventory of damaged covered personal property showing in detail the quantity, description, cost and amount of the loss. You must attach to the inventory copies of all bills, receipts and related documents that substantiate the inventory.

5. **Examination** — Any insured must submit to examination under oath in matters connected with the loss as often as we reasonably request and give us sworn statements of the answers. If more than one person is examined, we have the right to examine and receive statements separately and not in the presence of the others.

6. **Records** — You must produce records, including tax returns and index microfilms of all canceled checks, relating to value, loss and expense and permit copies and extracts to be made of them as often as we reasonable request.

7. **Damaged Property** — You must exhibit the damaged property as often as we reasonably request.

8. **Volunteer Payments** — You must not, except at **your** own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

9. **Abandonment of Property** — We do not have to accept any abandonment of property.

## VALUATION OF PROPERTY LOSSES

The valuation of property losses shall be based upon the following provisions:

1. **Actual Cash Value** —When replacement cost is not indicated on the Declarations for Property Coverage, the loss payment will be based upon the actual cash value at the time of loss with a deduction for depreciation.

2. **Replacement Cost** — When replacement cost is indicated on the Declarations for Property Coverage, the loss payment will be based upon the replacement cost without any deduction for depreciation.

   This replacement cost provision does not apply to objects of art, rarity or antiquity, or property of others.

   The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount **you** spend to repair or replace the damaged or destroyed property.

   Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. **You** may make a claim for actual cash value and later for the replacement cost if **you** notify **us** of **your** intent within 180 days after the loss.

3. **Rebuilding, Repairing or Replacing** — The valuation of losses is limited to the cost to rebuild, repair or replace with property of equivalent kind

and quality, to the extent practicable.

4. **Glass** — Glass will be valued at the cost of safety glazing material where required by code, ordinance or law.

5. **Merchandise Sold** — Merchandise that you have sold but not delivered will be valued at the selling price less all discounts and unincurred expenses.

6. **Valuable Papers and Records** — The valuation of valuable papers and records is the cost of blank materials.

7. **Tenant's Improvements** — Tenant's improvements losses will be valued at the basis applicable to Business Personal Property (actual cash value or replacement cost) if repaired or replaced at **your** expense within a reasonable time.

   Tenant's improvement losses are not covered if repaired or replaced at another's expense.

   Tenant's improvements losses will be valued at a portion of **your** original cost if not repaired or replaced within a reasonable time. This portion is the ratio between the time remaining on **your** lease and the time between the installation or acquisition of the improvements and the end of **your** lease. Any renewal options in **your** lease are to be considered in valuation of **your** loss.

   **EXAMPLE:**
   Tenant's improvements installed at the beginning of a five year lease with a five year extension. The value of the damaged or destroyed property after three years is 70 percent of **your** original cost if not repaired or replaced.

8. **Pair or Set** — Loss to an article which is part of a pair or set will be a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

9. **Appraisal** — If **you** and **we** do not agree on the amount of the loss, either party may demand that the amount be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask

a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

If the appraisers submit a written report of any agreement to us, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by you and us.

## LOSS PAYMENT

1. **Our Options** — **We** have the following options:

   a. pay the loss;

   b. rebuild, repair or replace with property of equivalent kind and quality, to the extent practicable, within a reasonable time;

   c. take all or any part of the damaged property at the agreed or appraised value.

   **We** must give **you** notice of **our** intent to rebuild, repair or replace within 30 days after receipt of a duly executed proof of loss.

2. **Insurable Interest** — **We** do not cover more than **your** insurable interest in any property.

3. **Your Losses** — **We** will adjust all losses with **you**. Payment will be made to **you** unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with **you** or the filing of an appraisal award with **us**.

4. **Property of Others** — Losses to property of others may be adjusted with **you**. **We** reserve the right to adjust with and pay owners. Payment to the owners satisfies **our** obligation to **you** for loss to this property. **We** may also choose to defend any suits arising from the owners.

5. **Deductible** — **We** pay only that part of **your** loss over the deductible amount stated on the

Declarations in any one occurrence.

6. **Limit of Insurance** — **We** will not pay more than **our** limit of insurance for any loss.

7. **Automatic Increase** — The limits of insurance are increased when a percentage increase is shown on the Declarations. The increase shown is the annual percentage increase and applies proportionally from the date of the most recent limit. The increase applies only to the limits of insurance shown on the Declarations.

8. **Seasonal Increase** — The limits of insurance for Business Personal Property will automatically increase by 25 percent, to provide for seasonal increase. This increase applies only if the limit of insurance is at least 100 percent of **your** average monthly values for the 12 months immediately preceding the date of the loss or damage.

   If **you** have been in business less than 12 months, the limit of insurance must be 100 percent of **your** average monthly values for the time **you** have been in business.

9. **Insurance Under More Than One Coverage** — If more than one coverage of this policy insures the same loss, we pay no more than the actual claim, loss or damage sustained.

10. **Insurance Under More Than One Policy** — If there is any other insurance which applies to a loss, **we** pay only for the excess of the amount due from such other insurance, whether collectible or not.

11. **Benefit To Others** — Insurance under Property Coverage shall not directly or indirectly benefit anyone having custody of **your** property.

## OTHER PROPERTY COVERAGE CONDITIONS

1. **Control of Property** — The Property Coverage is not affected by any act or neglect beyond **your** control.

2. **Death of an Individual Named Insured** — If **you** die, **your** rights and duties under the Property Coverage pass to **your** legal representative or other person having proper temporary custody of **your** property.

3. **Mortgage Provisions** — If a mortgagee (mortgage holder) is named in this policy, loss to buildings shall be paid to the mortgagee and **you** as interests

© Copyright 1987 AAIS

appear. If more than one mortgagee is named, they shall be paid in order of precedence.

The insurance for the mortgagee continues in effect even when **your** insurance may be void because of **your** acts, neglect, or failure to comply with the coverage terms. The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify **us**.

**We** will also notify the mortgagee if **we** cancel the policy. The cancellation conditions apply to the mortgagee.

**We** may request payment of the premium from the mortgagee, if **you** fail to pay the premium.

If **we** pay the mortgagee for a loss where **your** insurance may be void, the mortgagee's rights to collect that portion of the mortgage debt from **you** then belongs to **us**. This does not affect the mortgagee's right to collect the remainder of the mortgage debt from **you**. As an alternative, **we** may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

4. **Recoveries** — If **we** pay **you** for the loss under the Property Coverage and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

a. **You** must notify **us** promptly if **you** recover property or receive payment.

b. **We** must notify **you** if **we** recover property or receive payment.

c. Any recovery expenses incurred by either are reimbursed first.

5. **Suit Against Us** — No suit to recover any loss may be brought against **us** unless:

a. the **terms** of the Property Coverages have been fully complied with; and

b. the suit is commenced within one year after the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

6. **Waiver of Right of Recovery** — **You** may waive **your** right of recovery in writing before a loss without voiding the coverage.

**You** may waive **your** right of recovery in writing after a loss only to the following parties:

a. someone insured by this policy;

b. **your** tenant;

c. a business firm owned or controlled by **you**; or

d. a business firm which owns or controls **your** business.

© Copyright 1987 AAIS

# COMMERCIAL LIABILITY COVERAGES

This Liability Coverage Section contains the definitions, coverage descriptions, exclusions, limitations and conditions that apply to the Businessowners Liability Coverages.

## DEFINITIONS

1. **Auto** — This means a land motor vehicle, a trailer or a semi-trailer which is designed for use on public roads. **Auto** includes attached machinery and equipment.

2. **Basic Territory** — This means the United States of America, its territories and possessions, Canada and Puerto Rico.

3. **Bodily Injury** — This means bodily harm, sickness or disease sustained by a person and includes the required care and loss of services. **Bodily Injury** includes death that results from bodily harm, sickness or disease.

4. **Coverage Territory** — This means:

   a. the **basic territory**;
   b. international waters and airspace, only if the **bodily injury** or **property damage** occurs in the course of travel to or from the **basic territory**;
   c. the world, if the injury or damage arises out of:

      1) **products you** have made or sold in the **basic territory**; or
      2) the activities of a person who normally resides in the **basic territory**, but is away for a short time on **your** business; and

      provided that **your** liability to pay damages has been determined:

      1) in a suit on the merits in the **basic territory**; or
      2) in a settlement that **we** have agreed to.

5. **Impaired Property** — This means tangible property (other than **your product** or **your work**):

   a. whose value has been decreased:

      1) because it includes **your product** or **your work** that is, or is believed to be, defective, deficient or dangerous; or
      2) because **you** failed to carry out the terms of a contract; and

   b. whose value can be restored:

      1) by the repair, replacement, adjustment or removal of **your product** or **your work**; or
      2) by **your** fulfilling the terms of the contract.

6. **Incidental Contract** — This means a written:

   a. lease of premises;
   b. easement agreement (this does not include an agreement in connection with any construction or demolition operation on or adjacent to a railroad);
   c. promise to indemnify a municipality if required by an ordinance (this does not apply in connection with work done for the municipality);
   d. sidetrack agreement; or
   e. elevator maintenance agreement.

7. **Insured** — If shown on the Declarations as an "individual," **insured** means **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner.

   If shown on the Declarations as a "partnership" or a "joint venture," **insured** means **you** and all **your** partners or members and their spouses, but only with respect to the conduct of the business.

   If shown on the Declarations as an "organization" (other than a partnership or a joint venture), **Insured** means **you** and all of **your** executive officers and directors, but only while acting within the scope of their duties. It also includes **your** stockholders, but only for their liability as such.

   **Insured** also includes:

   a. anyone, except **your** employees, while acting as **your** real estate manager;
   b. if **you** die during the policy period, **your** legal representative while acting within the scope of his duties as such, or a person who has custody of **your** property with respect to liability arising out of the maintenance or use of that property until **your** legal representative is appointed;
   c. with respect to the operation, with **your** permission, of mobile equipment:

      1) **your** employee in the course of employment. This does not apply to a fellow employee injured in the course of employment;

© Copyright 1987 AAIS

2) any other person. This includes anyone legally liable for the conduct for such person but only:

   a) for liability arising out of the operation of the equipment; and

   b) if there is no other insurance covering the liability available to them;

3) no one is an insured for property damage to property owned by, rented to, in the charge of, or occupied by you, or an employee of anyone who is an insured under paragraph c.

d. your employees, for acts within the scope of their employment by you (this does not include your executive officers). None of these employees are insureds for:

   1) injury to you or to a fellow employee;

   2) property damage to property owned by, rented to or loaned to employees, or any of your partners or members and their spouses (if you are a joint venture or a partnership).

e. any organization (other than a joint venture or a partnership) newly acquired or formed by you, and in which you have a majority interest.

Such an organization is not an insured:

   1) if there is other similar insurance available to it;

   2) after 90 days immediately following that acquisition or formation; or

   3) for bodily injury or property damage that occurred prior to the acquisition or formation.

No person or organization is an insured with respect to the conduct of a current or past partnership or joint venture that is not shown on the Declarations as an insured.

8. **Limit** — This means the limit of liability that applies.

9. **Loading or Unloading** — This means the movement of property:

a. starting with the time it is removed from the point where it has been accepted for transit by auto, aircraft or watercraft;

b. continuing while it is in or on such vehicle; and

c. ending when it has been removed form the vehicle to its point of destination.

**Loading or Unloading** includes movement by any mechanical device attached to the vehicle.

10. **Occurrence** — This means an accident and includes repeated exposure to similar conditions.

11. **Products/Completed Work Hazard** —

a. **Products hazard** means bodily injury or property damage occurring away from premises you own or rent and arising out of your product after physical possession of it has been relinquished to others.

b. **Completed work hazard** means bodily injury or property damage arising out of your work. It does not include work that has not been completed, or that has been abandoned.

**Your work** is deemed completed at the earliest of the following times:

   1) when all work specified in your contract has been done;

   2) when all work to be done at a job site has been completed if your contract includes work at more than one site; or

   3) when your work at a job site has been put to its intended use by someone other than another contractor or subcontractor working on the same job site.

**Work** which requires further service, maintenance, correction, repair or replacement because of a defect or deficiency, but which is otherwise complete, shall be deemed completed.

c. Neither of these hazards include bodily injury or property damage arising out of:

   1) the transportation of property, unless the injury or damage arises our of a condition in or on a vehicle, created by **loading or unloading;**

   2) the presence of tools, uninstalled equipment or abandoned or unused materials; or

   3) products or work for which the classification on the Declarations specifies "including Products/Completed Work."

12. **Products** — This means goods or **products** manufactured, sold, handled, distributed or disposed of by you, others trading under your name, or a person or organization whose business or assets you have acquired.

Products includes:

a. warranties or representations made at any time with respect to the fitness, quality, durability or performance of **your products**; and
b. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or **products**.

Products does not include:

a. vending machines;
b. property that is rented to or placed for the use of others, but not sold; or
c. real property.

13. **Property Damage** — This means:

a. physical injury or destruction of tangible property; or
b. the loss of use of tangible property whether or not it is physically damaged.

14. **Terms** — This means all provisions, limitations, exclusions, conditions and definitions that apply.

15. **We, Us, Our** — These words mean the company providing this coverage.

16. **You, Your** — These words mean the persons or organizations named on the Declarations.

17. **Your Work** — This means:

a. work or operations performed by **you** or on **your** behalf;
b. materials, parts and equipment **you** supply for such work or operations; and
c. written warranties or representations made at any time regarding quality, fitness, durability or performance of any of the foregoing.

## PRINCIPAL COVERAGES

**We** provide insurance for the following coverages indicated by a specific limit or premium charge on the Declarations.

### COVERAGE L — BODILY INJURY LIABILITY PROPERTY DAMAGE LIABILITY

**We** pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence**.

This insurance applies only to **bodily injury** or **property damage** which occur:

1. within the **coverage territory**; and

2. during the policy period.

### COVERAGE M — MEDICAL PAYMENTS

**We** pay the medical expenses defined below for **bodily injury** caused by an accident:

1. on premises **you** own or rent;

2. on ways adjacent or next to premises **you** own or rent; or

3. arising out of **your** operations.

**We** pay such expenses regardless of fault but only if:

1. they arise out of an accident that occurred in the **coverage territory** and during the policy period; and

2. they are incurred and reported within one year of the accident.

Medical expenses means the reasonable and necessary expenses for:

1. medical, surgical, x-ray and dental services, including prosthetic devices and eyeglasses;

2. ambulance, hospital, professional nursing and funeral services; and

3. first aid at the time of the accident.

### COVERAGE N — PRODUCTS/COMPLETED WORK

**We** pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** arising out of the **Products/Completed Work Hazard** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence**. This insurance applies only to **bodily injury** or **property damage** which occur:

1. within the **coverage territory**; and

2. during the policy period.

### COVERAGE 0 — FIRE LEGAL LIABILITY

**We** pay for **property damage** to buildings, or parts

thereof, which **you rent** if the **property damage is** caused by fire for which **you** are legally liable. Buildings include fixtures permanently attached thereto.

All of the exclusions otherwise applicable to **property damage** do not apply to this coverage. However, **we** do not cover:

1. liability arising under any contract to indemnify any person or organization for damages by fire to the premises; or

2. liability arising out of **property damage** expected, directed or intended by an **insured.**

## INCIDENTAL LIABILITY COVERAGES

These coverages are subject to all the terms of the Principal Coverages. They do not increase the limits stated for the Principal Coverages.

### INCIDENTAL MEDICAL MALPRACTICE INJURY

**We** cover **bodily injury** arising out of the rendering or failure to render the following services:

1. medical, surgical, dental, x-ray or nursing services or treatment, or the furnishing of food or beverages in connection therewith; or

2. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This coverage does not apply to:

1. expenses incurred by an **insured** for first aid to others at the time of an accident;

2. an **insured** or an **employee** engaged in the business or occupation of providing any of the services described under 1. and 2. above; or

3. injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described in 1. and 2. above.

### MOBILE EQUIPMENT

**We** pay all sums for which an **insured** is legally liable for **bodily injury** or **property damage** resulting from mobile equipment, including attached equipment and machinery.

This coverage applies only to land motor vehicles that

meet one or more of the following criteria:

1. Those which are used only on premises owned by or rented to **you** (premises includes adjoining ways).

2. Those which are designed primarily for use off public roads.

3. Those which travel on crawler treads.

4. Those which are self-propelled and designed or used only to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:

   a. power cranes, shovels, loaders, diggers or drills;
   b. concrete mixers (this does not include the mix-in-transit type); and
   c. graders, scrapers, rollers and other road construction or repair equipment.

5. Those which are not self-propelled, but are used primarily to afford mobility to the following types of equipment permanently attached thereto:

   a. air compressors, pumps and generators (this includes spraying, welding and building cleaning equipment);
   b. geophysical exploration, lighting and well servicing equipment; and
   c. cherry pickers and similar devices used to raise or lower workers.

This coverage does not apply to self-propelled vehicles with the following types of permanently attached equipment:

1. equipment designed primarily for snow removal, street cleaning, road maintenance other than road construction or resurfacing;

2. cherry pickers and similar devices used to raise or lower workers;

3. air compressors, pumps and generators (this includes spraying, welding and building cleaning equipment);

4. geophysical exploration, lighting and well servicing equipment.

**We** cover **bodily injury** or **property damage** arising out of the operation of any of the equipment listed in paragraphs 2., 3. and 4. above.

We will provide any liability, uninsured motorists, no fault or other coverages required by any motor vehicle insurance law. We will provide the required limits for such required coverage.

## DEFENSE COVERAGE

Payments under this coverage are in addition to the limits for the Commercial Liability Coverage.

We have the right and duty to defend a suit seeking damages for bodily injury or property damage which may be covered under the Commercial Liability Coverage. We may make investigations and settle claims or suits we decide are appropriate.

Suit includes any alternative dispute resolution proceeding involving bodily injury or property damage to which:

1. you must submit; or

2. you submit with our consent.

We do not have to provide defense after we have paid an amount equal to the limit as the result of:

1. a judgment; or

2. a written settlement agreed to by us.

If we defend a suit, we will pay:

1. The costs taxed to the insured.

2. The expenses incurred by us.

3. The actual loss of earnings by an insured for the time spent away from work at our request. We pay up to $100 per day.

4. The necessary expenses incurred by an insured at our request.

5. Pre-judgment interest awarded against any insured on that part of the judgment we pay. If we offer to pay the limit, we will not pay any pre-judgement interest based on that period of time after the offer.

6. The interest which accrues beginning with entry of a judgment and ending when we tender, deposit in court, or pay up to our limit.

7. The cost of appeal bonds or bonds for the release of attachments up to our limit. We are not required to apply for or furnish such bonds.

8. The cost, up to $500, for bail bonds required of an insured because of an accident or traffic violation arising out of the use of a vehicle to which Coverage L applies. We are not required to apply for or furnish such bonds.

## EXCLUSIONS THAT APPLY TO ALL COVERAGES

We do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

1. We do not pay for bodily injury or property damage which is expected by, directed by, or intended by an insured. This exclusion does not apply to bodily injury that arises out of the use of reasonable force to protect people or property.

2. We do not pay for bodily injury or property damage liability which is assumed under a contract or an agreement. This exclusion does not apply to an incidental contract.

3. We do not pay for bodily injury or property damage that arises out of the rendering or the failure to render a professional service, except as provided by the coverage under Incidental Medical Malpractice Injury.

4. We do not pay for bodily injury or property damage that arises our of the use of mobile equipment in or in the practice or preparation for racing, speed, pulling or pushing, demolition or stunt activities or contests.

5. We do not pay for bodily injury or property damage that arises out of transporting mobile equipment by an auto owned by, operated by, rented to or loaned to an insured.

6. We do not pay for bodily injury or property damage that arises out of ownership, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of:

a. an aircraft;
b. an auto, except as provided under the Incidental Coverage — Mobile Equipment. This exclusion does not apply to the parking of an auto on premises owned by, rented to or controlled by you or on the ways immediately adjoining if the auto is not owned by or rented to or loaned to

BP-200

© Copyright 1987 AAIS

an **insured;**

c. a watercraft. This exclusion does not apply if the watercraft:

   1) is on shore on premises owned by, rented to or controlled by **you;** or
   2) is not owned by **you** and is:

      a) less than 26 feet in length, and
      b) not being used to carry persons or property for a charge;

d. mobile equipment, except as provided under Incidental Coverage — Mobile Equipment.

Exclusion 7. applies if **you** are in the business of manufacturing, distributing, selling or serving alcoholic beverages.

7. **We** do not pay for **bodily injury** or **property damage** for which an **insured** may be held liable by reason of:

   a. causing or contributing to the intoxication of a person;
   b. the furnishing of alcoholic beverages to a person under the influence of alcohol; or
   c. a law or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

8. **We** do not pay for:

   a. **bodily injury** to an employee of an **insured** if it occurs in the course of employment; or
   b. consequential injuries to a spouse, child, parent, brother or sister of such injured employee.

Exclusion 8 applies where:

1) the **insured** is liable either as an employer or in any other capacity; or

2) there is an obligation to fully or partially reimburse a third person for damages arising out of paragraph 8.a. or 8.b. above.

Exclusion 8 does not apply to liability assumed by an **insured** under an **incidental contract.**

9. **We** do not pay for **bodily injury** or **property damage:**

   a. arising wholly or partially out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

   1) at or from premises **you** own, rent, use or occupy, unless the **bodily injury** or **property damages** arise from the heat, smoke or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be;

   2) at or from premise used by **you,** or for **you** or others, for the handling, storage, disposal, processing or treatment of waste;

   3) occurring in the transporting, handling, treatment, storage, disposal or processing of any material, including waste, by or for **you** or by any person or organization for whom **you** may be legally liable; or

   4) at or from any premises where **you** or any contractor or subcontractor, directly or indirectly under **your** control, are working or have completed work:

      a) if the pollutant is on the premises in connection with such work, unless the **bodily injury** or **property damages** arise from the heat, smoke or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be; or

      b) if the work in any way involves testing, monitoring, clean-up, containing, treating or removal of pollutants.

   b. due to any loss, cost or expense arising out of governmental action or inaction in any way the testing, monitoring, clean-up, containing, treating or removal of pollutants.

Pollutants means:

1) any solid, liquid, gaseous, thermal, electrical emission (visible or invisible) or sound emission pollutant, irritant or contaminant; or
2) waste, including materials to be recycled, reclaimed or reconditioned as well as disposed of.

10. **We** do not pay for **bodily injury** if benefits are provided or are required to be provided by an **insured** under a workers' compensation, nonoccupational disability, occupational disease or like law.

11. **We** do not pay for **bodily injury** or **property damage** that arises out of war. War includes undeclared war, civil war, insurrection, rebellion or

revolution, or an act or condition of war.

## ADDITIONAL EXCLUSIONS THAT APPLY TO PROPERTY DAMAGE LIABILITY

1. **We** do not pay for **property damage** to property owned by, occupied by or rented to an **insured**, except as covered under Coverage O.

2. **We** do not pay for **property damage** to premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises. This exclusion does not apply if the premises are **your work** and were not occupied, rented or held for rental by **you**.

3. **We** do not pay for **property damage** to property used by or loaned to **you**. This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

4. **We** do not pay for **property damage** to property in the care, custody or control of an **insured**. This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

5. **We** do not pay for **property damage** to that specific part of real property on which work is being performed by:

   a. **you**, or
   b. a contractor or subcontractor working on **your** behalf,

   if the **property damage** arises out of such work. This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

6. **We** do not pay for **property damage** to that specific part of any property that must be restored, repaired or replaced because of faulty workmanship. This exclusion does not apply to:

   a. **property damage** covered under the Products/Completed Work Hazard; or
   b. liability assumed under a written sidetrack agreement.

7. **We** do not pay for **property damage** to **your products** if the damage is caused by the **product** or a part of it.

8. **We** do not pay for **property damage** to work performed by **you** if the damage is caused by the work or a part of the work and included in the

**Products/Completed Work Hazard.** This exclusion does not apply if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on **your** behalf.

9. **We** do not pay for **property damage** to property that has not been physically injured or destroyed, or to **impaired property** that results from:

   a. a delay or failure to perform a contract by **you** or one acting on **your** behalf; or
   b. a defect, deficiency, inadequacy or unsafe condition in **your product** or **work** performed by **you** or on **your** behalf.

   This exclusion does not apply to the loss of use of property resulting from sudden and accidental injury to or destruction of **your products** or **your work** after the **products** or **work** have been put to their intended use.

10. **We** do not pay for any loss or expense incurred by **you** or anyone else arising out of the loss of use, disposal, withdrawal or recall (including any expenses involved in the withdrawal or recall) of **your products**, **your work**, or **impaired property**. This applies when the loss of use, disposal, withdrawal or recall was because of a known or suspected defect, deficiency or unsafe condition.

## ADDITIONAL EXCLUSIONS THAT APPLY TO MEDICAL PAYMENTS

1. **We** do not pay for medical expenses for bodily **injury** to an **insured**.

2. **We** do not pay for medical expenses for bodily **injury** to:

   a. a person hired by or on behalf of any **insured** to do work for an **insured**; or
   b. a tenant of an **insured**.

3. **We** do not pay for medical expenses for bodily **injury** to a person injured on the part of the premises owned by or rented to **you** that the person normally occupies.

4. **We** do not pay for medical expenses for bodily **injury** to a person while taking part in athletic activities.

5. **We** do not pay for medical expenses for bodily **injury** included in the Products/Completed Work Hazard.

© Copyright 1987 AAIS

6. **We** do not pay for medical expenses for **bodily injury** to any member of the named **insured**, if the named **insured** is a club.

7. **We** do not pay for medical expenses for **bodily injury** to a guest of the named **insured**, if the named **insured** is a hotel, motel or tourist court.

8. **We** do not pay for medical expenses for **bodily injury** to a person if benefits are provided or required to be provided under any workers' compensation, nonoccupational disability, occupational disease or like law.

9. **We** do not pay for medical expenses for **bodily injury** to a student, camper, patient or inmate enrolled in a program of any facility owned or operated by **you** or on **your** behalf.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** —

   a. In the case of an **occurrence**, or if an **insured** becomes aware of anything that indicates that there might be a claim under the Commercial Liability Coverage, the **insured** must promptly give notice to **us** or **our** agent.

   b. The notice to **us** must state:

      1) the **insured's** name;
      2) the policy number;
      3) the time, the place and the circumstances of the **occurrence**; and
      4) the names and addresses of all known potential claimants and witnesses.

2. **Volunteer Payments** — An **insured** must not make payments or assume obligations or other costs except at the **insured's** own cost. This does not apply to first aid to others at the time of **bodily injury**.

3. **Other Duties** —

   a. If a claim is made or suit is brought, the **insured** must:

      1) promptly send to **us** copies of all legal papers, demands and notices; and
      2) at **our** request, assist in:

         a) a settlement;
         b) the conduct of suits. This includes the attendance at trials or hearings;
         c) the enforcing of rights against all parties

who may be liable to an **insured** for the injury or damage;

   d) the securing of and giving of evidence; and

   e) obtaining the attendance of all witnesses.

   b. In the case of a medical payments loss:

      1) the injured person (or one acting on such person's behalf) must:

         a) give **us** written proof of claim (under oath if requested) as soon as practicable; and
         b) give **us** permission to get copies of the medical records;

      2) The injured person must submit to medical exams by doctors chosen by **us** when and as often as **we** may reasonably require.

## HOW MUCH WE PAY

1. The limits, shown on the Declarations and subject to the following conditions, are the most **we** pay regardless of the number of:

   a. **insureds** under the Commercial Liability Coverage;
   b. persons or organizations who sustain injury or damage; or
   c. claims made or suits brought.

   The payment of a claim under Coverage M does not mean that **we** admit **we** are liable under other coverages.

2. The General Aggregate is the most **we** will pay during a policy period for the sum of:

   a. all damages under Coverage L, except damages due to injury or damage included in the **Products/Completed Work Hazard**; and
   b. all medical expenses under Coverage M.

3. The Aggregate **Limit** shown for **Products/ Completed Work Hazard** is the most **we** will pay during a policy period under Coverage N for damages due to injury or damage included under the **Products/Completed Work Hazard**.

4. The Each Occurrence **Limit**, subject to the General Aggregate **Limit** and the **Products/Completed Work Hazard Limit**, is the most **we** will pay for the total of:

   a. damages under Coverage L and N; and

BP-200       — 22 —       © Copyright 1987 AAIS

b. medical expenses under Coverage M;

due to all bodily injury and property damage arising out of a single occurrence.

5. Subject to the Each Occurrence Limit and General Aggregate Limit, our limit for property damage covered under Fire Legal Liability is $50,000 for each occurrence unless otherwise shown on the Declarations.

6. Subject to the General Aggregate and Each Occurrence Limit, the Medical Payment Limit is the most that we will pay under Coverage M for all medical expenses because of bodily injury sustained by any one person.

The General Aggregate and Aggregate Limit shown for Products/Completed Work Hazard apply separately to each consecutive 12-month period beginning with the inception date of the Commercial Liability Coverage shown on the Declarations. They also apply separately to any remaining policy period of less than 12 months, unless the Commercial Liability Coverage has been extended after it was written. In that case, the additional period will be considered part of the last preceding period for the purpose of determining limits.

## CONDITIONS

1. **Bankruptcy** — Bankruptcy or insolvency of an Insured does not relieve us of our obligations for Commercial Liability Coverage.

2. **Suit Against Us** — No suit may be brought against us unless:

   a. all the terms of the Commercial Liability Coverage have been complied with; and

   b. the amount of the Insured's liability has been determined by:

   1) a final judgment against an Insured as a result of a trial; or
   2) a written agreement by the Insured, the claimant and us.

   No person has a right under the Commercial Liability Coverage to join us or implead us in actions that are brought to determine an Insured's liability.

3. **Subrogation** — If we pay under the Commercial Liability Coverage, we may require from an Insured an assignment of any right of recovery. We are not liable under the Commercial Liability Coverage if

any Insured has impaired our right to recover. An Insured may waive its right to recover, in writing, before an occurrence takes place without voiding coverage.

4. **Commercial Liability Coverage Premium** — If the premium is shown on the Declarations as a deposit premium, we will compute the final earned premium at the end of each audit period shown on the Declarations. If it is more than the deposit premium paid by you, we will bill you for the difference. If the final earned premium is less than the deposit premium paid by you, we will return the difference to you. You must maintain records of information that is necessary for computing the premium. Copies of the records must be sent to us at the end of the audit period or when requested by us.

5. **Insurance Under More Than One Policy** — (Applies to all coverages except Coverage M — Medical Payments.).

   a. Insurance under this Commercial Liability Coverage is primary except as provided under paragraph 5.c. below, or unless otherwise stated. The amount of our liability is not reduced because of other insurance which applies to the loss on other than a primary basis.

   b. If the other insurance is also primary, we will share in the loss as follows:

   1) If the other insurance provides for contribution by equal shares, we will pay equal amounts with other insurers until:

   a) the lowest applicable limit under any one policy is reached; or
   b) the full amount of the loss is paid. If part of the loss remains unpaid, we will pay an equal share with the other insurers until the full amount of the loss is paid; or until we have paid our limit in full.

   2) If the other insurance does not provide for contribution by equal shares, we will pay no more than that proportion of the loss to which the applicable limit under this policy for such loss bears to the total applicable limit for all insurance against the loss.

   c. Insurance under this Commercial Liability Coverage is excess over any other insurance:

   1) if the other insurance, whether primary, excess, contingent or on any other basis, provides:

a) fire, extended coverage, builders' risk, installation risk or similar coverage for **your** work; or

b) fire insurance for premises rented to **you;** or

2) if the other insurance applies to any loss arising out of the maintenance or use of aircraft, **autos** or watercraft which may be covered by this policy.

d. When this insurance is excess over any other insurance:

1) **we** will have no duty under Coverage **L** to defend any claim or suit that any other insurer has a duty to defend. If no other insurer defends, **we** will do so. However, **we** will be entitled to the **insured's** rights against all those other insurers.

2) **we** will pay **our** share of the amount of loss, if any, that exceeds the sum of:

a) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b) the total of all deductibles and self-insured amounts required by such other insurance.

We will share the remaining loss with any other insurance that is not described in this excess insurance provision and was not bought specifically to apply in excess of the **limits** of insurance shown on the Declarations page of this Commercial Liability Coverage.

6. **Separate insureds** — Coverage provided under the Commercial Liability Coverage applies separately to each **insured** against whom claim is made or suit is brought. This does not affect the **limits** stated under How Much We Pay.

7. **Motor Vehicle Financial Responsibility Certification** — When Commercial Liability Coverage is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided for **bodily injury** liability or **property damage** liability will comply with the provisions of the law to the extent of the coverage and **limits** of insurance required by that law.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This insurance does not apply:

1. under any liability coverage, to **bodily injury** or **property damage:**

a. with respect to which an **insured** under the policy is also an **insured** under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any policy but for its termination upon exhaustion of its **limit** of liability; or

b. resulting from the **hazardous properties** of **nuclear material** and with respect to which:

1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereto; or

2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. under any Medical Payments coverage, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3. under any liability coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material** if:

a. the **nuclear material:**

1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured;** or

2) has been discharged or dispersed therefrom;

b. the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, stored, processed, transported or disposed of by or on behalf of an **insured;** or

c. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance,

© Copyright 1987 AAIS

operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c.) applies only to **property damage** to such **nuclear facility** and any property thereat.

## DEFINITIONS

The following definitions apply to the Nuclear Energy Liability Exclusion:

1. **Hazardous Properties** —These include radioactive, toxic or explosive properties.

2. **Nuclear Material** — This means **source material, special nuclear material** or **by-product material.**

3. **Source Material, Special Nuclear Material, By-product Material** — These have the meanings given them in the Atomic Energy Act of 1954, or in any law amendatory thereof.

4. **Spent Fuel** — This means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor.**

5. **Waste** — This means any **waste** material:

   a. containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

   b. resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility.**

6. **Nuclear Facility** —This means:

   a. any **nuclear reactor.**
   b. any equipment or device designed or used for:

   1) separating the isotopes of uranium or plutonium;
   2) processing or utilizing **spent fuel**; or
   3) handling, processing or packaging **waste.**

   c. any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium-223 or any combination thereof, or more than 250 grams of uranium-235.

   d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such sites, and all premises used for such operations.

7. **Nuclear Reactor** — This means any apparatus designed or used:

   a. to sustain nuclear fission in a self-supporting chain reaction; or
   b. to contain a critical mass of fissionable material.

8. **Property Damage** — This includes all forms of radioactive contamination of property.

BP-200

— 25 —

© Copyright 1987 AAIS

EXHIBIT "B"

Begin forwarded message:

**From:** Donna Plumley <DPlumley@uticafirst.com>
**Date:** June 13, 2016 at 7:47:34 AM CDT
**To:** "Lawrence Cohn (userlaco@aol.com)" <userlaco@aol.com>
**Subject: FW: statute of limitations**

Hello Mr. Cohn,

Attached is the statute of limitations per state.  Pennsylvania has a two year limit for property damage.

I should have an answer this week regarding the withheld depreciation.

Sincerely,

Donna Plumley
Claim Examiner
PH: 800-456-4556 x3204
Ex: 315-736-2139
Email: claims@uticafirst.com

---

**From:** Ryland H. Demarco
**Sent:** Wednesday, June 08, 2016 2:44 PM
**To:** Donna Plumley
**Subject:**

http://www.nolo.com/legal-encyclopedia/statute-of-limitations-state-laws-chart-29941.html

---

Scanned by **MailMarshal** - Marshal's comprehensive email content security solution. Download a free evaluation of MailMarshal at www.marshal.com

---

1

EXHIBIT "C"

From: **Deborah Cohn** userdebco@gmail.com 
Subject: Lawrence H. Cohn, Utica Claim #91363
Date: May 22, 2016 at 16:36
To: Lawrence Cohn userlaco@aol.com

Dear Ms Plumley:

As I have previously advised you, I have used the proceeds (and more) that I have received from Utica Mutual Insurance Company for the damage sustained to my commercial property at 10 East 5th St., Chester, Pa . to purchase another commercial property in San Miguel de Allende, GTO, Mexico. The property that I have purchased is a commercial property that is being used as a hotel. The name of the hotel at the time of purchase was "Tres Casitas." I am in the process of changing the name to "Sollano 34" which is also the address. The purchase price was $520,000.00 US Dollars.

Accordingly, in accordance with page 12, Sections 2 and 3 of my insurance contract I am making demand for the "full replacement cost" of the damages as estimated. It is my position that this commercial property I purchased meets the contract requirement that it be "a property of equivalent kind and quality.

The damaged building in Chester was a commercial property of 3 floors. There was one apartment residence and multiple offices for rent. It was constructed of brick and plaster with interesting details. The new property is also commercial. Although there are no office rentals, it does have rental units. It is constructed of brick and plaster and has interesting details. You can see the type of construction used and the interesting details in the photos on the websites. Both properties are of comparable size.

The property was settled upon on January 7, 2016 in San Miguel de Allende, GTO, Mexico before Notario Publico 2, Lic. Luis Felipe Sanchez Hdez. The deed was legally filed on February 5, 2016. In connection with this transaction, I am sending you herein the following documents:

1: DEED number 4926 between Nanci Closson Hargrave and Shannon Blair Closson and Lawrence H. Cohn. This deed reflects the address of the property as Calle Diez de Sollano #34, Centro, San Miguel de Allende. The purchase price was $520,000.00 or $8,606,000.00 pesos.

2: Proof of the filing of the deed issued by the State of Guanajuato in the country of Mexico.

There is nothing contained in the deed that reflects that this property is a commercial property and is being operated as a hotel. Towards that end, you will find addresses to 2 websites that the prior owner created for the hotel and which I am currently using. In one, the new name, Sollano 34 is being used. Tres Casitas is being used in the other. They are:

http://www.nanciclosson.com/tres-casitas-vacation-rentals-in-san-miguel/

sanmiguelweeklyrentals.com

https://www.tripadvisor.com/Hotel Review-g151932-d1158456-Reviews-Tres_Casitas-San_Miguel_de_Allende_Central_Mexico_and_Gulf_Coast.html

In addition, I am attaching several reviews of the hotel that guests have written to Trip Advisor. You will note that the reviews contain my name and my wife's name (Larry and Deborah) as the new owners.

To further assist in establishing that the property is a hotel, I am attaching multiple other documents, which, when viewed together should firmly establish that I am operating a commercial enterprise from the newly purchased property. They include

3. Statement dated 5/20/2016 from C.P. Alejandra Ordenez Velasquez stating that she is my accountant; that I am operating a hotel at Sollano 34 and that she pays any taxes due on income earned. Her telephone number is 52 461 171 2044 and 52 461 222 4018.

4. Document from INM dated 2/16/2016. This document is a work permit issued to me as a foreigner. This work permit allows me to work in "Sector de Renta de departamentos y casas amueblados con servicio de hoteleria en San Miguel de Allende, Gto."

5. Copy of Cedula de Identificacion Fiscal (front and reverse) and Copies of store receipts (FACTURAS). In order to conduct business in Mexico, I had to apply to the taxing authority (SAT) for a Cedula de Identificacion Fiscal. SAT provided me with a tax ID# or Registro Federal de Contribuyente (RFC) number. My RFC number is COLA461120EY6). This official number must appear on any receipts for purchases that I make if I want to use the receipt as deduction on my tax return here in Mexico. Those receipts that the stores give me for purchases I make are called "facturas." These facturas have my name, RFC # and the address of the business, which is Sollano 34, San Miguel de Allende.

6. Copy of CONSTANCIA DE SITUACION FISCAL dated 5/20/2016. (3pages). This document has my name, the hotel's address and that my "Actividad Economica" is that of "hoteleria."

If required, I can also forward a listing of contact information of guests who have stayed at the hotel subsequent to my ownership. I also have emails from potential guests who have made inquiries as to availability and rates.

It is my legal position that the information contained herein is sufficient to establish that the new property, purchased with the insurance proceeds, is another commercial property of "like or equivalent" kind and meets the Insurance policy's requirements.

Finally, just to cover all bases, I do not live at the hotel. My wife and I own our home which is located at Privada del Sol #15, San Miguel de Allende. A copy of my driver's license with address and recent real estate tax bill is also included.

I would very much appreciate it if you would give this request your prompt consideration. The Statute of Limitations expires next month.

Anticipating your kind cooperation. I am, Very truly yours,
Lawrence H. Cohn


# Documentation



Lawrence Cohn, Claim
#91363, Do...(Utica).pdf